## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JUAN HURTADO COMACHO,** | : | |
| **Petitioner,** | : | |
| | : | **No. 1:20-cv-1481** |
| **v.** | : | |
| | : | **(Judge Rambo)** |
| **H. QUAY,** | : | |
| **Respondent** | : | |

## MEMORANDUM

On August 21, 2019, *pro se* Petitioner Juan Hurtado Comacho ("Petitioner"), who is currently incarcerated at the United States Penitentiary Allenwood in White Deer, Pennsylvania ("USP Allenwood"), initiated the above-captioned action by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. No. 1.) Petitioner asserts that his due process rights were violated during his disciplinary and parole hearings because he was not provided a Spanish interpreter. (*Id.*) Following an Order to show cause (Doc. No. 5) and two (2) extensions of time (Doc. Nos. 8-11), Respondent filed a response on November 6, 2020 (Doc. No. 15). To date, Petitioner has filed neither a traverse nor a motion seeking an extension of time to do so. Accordingly, because the time period for filing a traverse has expired, Petitioner's § 2241 petition is ripe for disposition.

## I.      BACKGROUND

Petitioner entered federal custody on June 6, 1980, when he arrived in Key West, Florida from Cuba as part of the Freedom Flotilla.  (Doc. No. 15-2 at 1.)  On August 10, 1981, while detained at USP Atlanta, Petitioner attacked and killed another Cuban detainee.  (*Id.*; Doc. No. 15-14 at 1.)  Petitioner's attack "was highly aggravated in that the other inmate was handcuffed and defenseless, and the attack was brazen as it was carried out in the presence of 4 unarmed correctional officers, and the motivation for the attack was 'honor.'"  (Doc. No. 15-2 at 1.)  Petitioner hid in a dumbwaiter, jumped out when the victim was being taken to the shower, and stabbed him multiple times with a homemade knife.  (*Id.*)  Petitioner pled guilty to second-degree murder in the United States District Court for the Northern District of Georgia and was sentenced to life imprisonment with the possibility of parole on April 23, 1982.[1]  (*Id.*; Doc. Nos. 15-3 at 1; 15-4 at 1-2, 15-14 at 1.)  On August 25, 1982, the United States Parole Commission conducted an initial parole hearing. (Doc. No. 15-2 at 1.)  The Commission denied parole and continued Petitioner's case for a ten (10)-year reconsideration hearing in August of 1992.  (*Id.*)

---

[1] Respondent's exhibits are inconsistent in that some indicate Petitioner was sentenced by the United States District Court for the Northern District of Georgia, others indicate the United States District Court for the Middle District of Georgia, and yet another states the United States District Court for the Southern District of Georgia.  A review of PACER, however, confirms that Petitioner's criminal proceedings occurred in the Northern District of Georgia.

2

**A.      Facts Concerning Petitioner's Disciplinary Proceedings**

Petitioner has received 68 disciplinary infractions since 1991. (*Id.* at 2.)  Most recently, on April 20, 2017, Petitioner was charged with a violation of Codes 298 and 224A, Interfering with Staff in the Performance of Duties and Attempted Assault of Any Person.  (Doc. No. 1 at 11.)  Petitioner received advance notice of the charge on that date, and he was advised of his rights before the Disciplinary Hearing Officer ("DHO") on April 27, 2017. (*Id.*)  The DHO held Petitioner's disciplinary hearing on May 3, 2017.  (*Id.* at 12.)  At that time, Petitioner waived his right to a staff representative, did not request representation, and did not request postponement to obtain representation.  (*Id.* at 11.)  Petitioner denied the charge and stated that the incident was due to a lack of communication.  (*Id.*)  Petitioner did not request that any witnesses appear on his behalf.  (*Id.*)  The DHO found Petitioner guilty of a violation of Code 224A, Attempted Assault of Any Person.  (*Id.* at 12-13.)  He imposed sanctions of fifteen (15) days of disciplinary segregation and three (3) months' loss of telephone privileges.  (*Id.* at 13.)  Petitioner was advised of his right to appeal, and a copy of the DHO's report was provided to him on May 8, 2017.  (*Id.* at 14.)

## B.     Facts Concerning Parole and Parole Proceedings

Federal inmates who are subject to the Parole Act may qualify for one of two types of parole: discretionary or mandatory (also known as two-thirds) parole.[2]  An inmate serving a sentence longer than thirty (30) years, including life sentences, becomes eligible for discretionary parole after ten (10) years.  18 U.S.C. § 4205(a).  An inmate may be released on discretionary parole if the Commission determines that: (1) the inmate has substantially observed institutional rules; (2) release would not depreciate the seriousness of his offense or promote disrespect for the law; and (3) release would not jeopardize the public's welfare.  18 U.S.C. § 4206(a).

An inmate who is not released on discretionary parole can then become eligible for "mandatory" parole.  An inmate becomes eligible for this type of parole consideration after he has served two-thirds of each consecutive term or terms or after serving thirty (30) years of each consecutive term or terms of more than forty-five (45) years, including any life terms.  *Id.* § 4206(d).  Despite the name, "mandatory" parole is not mandatory.  *See Dufur v. U.S. Parole Comm'n*, 314 F. Supp. 3d 10, 12 (D.D.C. 2018) ("This case presents the question whether mandatory parole in the federal prison system is mandatory.  It is not.").  Even if an inmate is

---

[2] "The Parole Act was repealed effective November 1, 1987, but it 'remains in effect for individuals who committed an offense before that date.'"  *Coleman v. U.S. Parole Comm'n*, 726 F. App'x 909, 911 (3d Cir. 2018) (quoting *Mitchell v. U.S. Parole Comm'n*, 538 F.3d 948, 950 n.2 (8th Cir. 2008)).

eligible for "mandatory" parole, he will not be released if the Commission determines either that: (1) he has "seriously or frequently violated institution rules and regulations"; or (2) that there is a "reasonable probability" that he "will commit any Federal, State, or local crime."  18 U.S.C. § 4206(d).

Petitioner became eligible for "mandatory" parole on August 10, 2011.  (Doc. No. 15-4 at 2.)  He had a parole hearing on September 7, 2011.  (Doc. No. 15-5 at 1.)  During the hearing, it was noted that from 1991 through 2011, Petitioner had accumulated 62 disciplinary infractions, many of which were serious.  (*Id.* at 3.)  In particular, the Commission noted that Petitioner had received: four (4) drug-related infractions, six (6) related to possession of weapons, three (3) for assaulting officers, three (3) for assaults with weapons, four (4) assaults with serious injury, and six (6) involving destruction of property.  (*Id.*)  Based on these, the Commission denied Petitioner parole.  (Doc. No. 15-6.)  The Commission concluded that there was a "reasonable probability that [Petitioner] would commit new criminal conduct based on the fact that [he had] more than 62 disciplinary infractions [and] that [he] had clearly both frequently and seriously violated the rules of the institution."  (*Id.*)  Petitioner was scheduled for a statutory interim hearing in September of 2013.  (*Id.*)  On November 10, 2011, Petitioner appealed the denial of parole to the National

Appeals Board.  (Doc. No. 15-7.)  On February 22, 2012, the National Appeals Board affirmed the Commission's decision to deny parole.  (Doc. No. 15-8.)

The Commission held statutory interim parole hearings for Petitioner in 2014 and 2017.  (Doc. Nos. 15-9; 15-10.)  During these hearings, the Commission reexamined Petitioner's parole eligibility and concluded that there should be no change in the previous decision to deny parole.  (*Id.*)  In each denial, the Commission noted that Petitioner continued to incur new disciplinary infractions between each hearing.  (*Id.*)

Petitioner's most recent parole hearing occurred on July 10, 2019, before Examiner Kubic.  (Doc. No. 15-2 at 1.)  Petitioner was present, as was his Case Manager Angela Dewalt, who assisted in translating for Petitioner.  (*Id.* at 4.)  At the beginning of the hearing, Examiner Kubic introduced himself and asked Petitioner for his name and federal register number.  (Doc. No. 15-11.)  Petitioner gave his name but refused to give his register number.  (*Id.*)  He indicated, in Spanish, that he needed an interpreter.  (*Id.*)  Examiner Kubic asked whether Case Manager Dewalt could speak Spanish, and she indicated she did.  (*Id.*)  Examiner Kubic asked, in English, whether Petitioner could speak any English at all.  (*Id.*)  Petitioner responded, in Spanish, that he spoke a little English.  (*Id.*)  Examiner Kubic then asked, in English, "Um, do you want to go forward with your hearing today or do

you want . . . we could put you on the next docket and get you an interpreter." (*Id.*) Petitioner responded that he wanted to go forward with the hearing. (*Id.*) He stated, in English, "I want this hearing because I've waited 2 years." (*Id.*)

Examiner Kubic asked Petitioner for his register number again, and Petitioner responded with his number in English. (*Id.*) Based on this statement, Examiner Kubic accepted Petitioner's waiver of an interpreter and proceeded with the hearing. (*Id.*) During the hearing, Examiner Kubic asked Petitioner questions. (*Id.*) At times, Petitioner responded in English. (*Id.*) At other times, he had Case Manager Dewalt interpret for him. (*Id.*) Moreover, the recording indicates that at times, an unidentified male individual assisted in interpreting Petitioner's responses. In addition, Petitioner submitted a written statement, in English, of his explanation for the disciplinary infraction he received in 2017. (Doc. No. 15-12.) At the end of the hearing, Examiner Kubic explained that he would be recommending that the Commission deny parole, noting that Petitioner needed to allow more time to elapse in which he did not incur more disciplinary infractions. (*Id.*) Petitioner then attempted to explain, in broken English, that he had gone two (2) years (from 2017-2019) without incurring a new infraction and that his assault infractions occurred because he was defending himself. (*Id.*)

On July 30, 2019, the Commission denied Petitioner parole.  (Doc. No. 15-13 at 1.)  In doing so, it stated:

> The Commission continue to find there is a reasonable probability you will commit a future Federal, State or local crime if granted release at this time.  This finding is due to your frequent and serious violations of the rules of the institution.   Specifically, you have incurred 69 disciplinary infractions since 1991 that resulted in findings of guilt by the Disciplinary Hearing Officer.   Additionally, 7 of these serious infractions were committed since you were initially denied mandatory parole in 2011 and the last infraction (committed since your last hearing) involved an Attempted Assault on a Correctional Officer.

(*Id.*)  Petitioner was scheduled for a statutory interim hearing in July of 2021.  (*Id.*) The Commission indicated that its decision was appealable to the National Appeals Board.  (*Id.*)  Petitioner, however, never exercised his right of appeal.  (Doc. No. 15-14 at 2.)

## C.    Petitioner's § 2241 Petition

Petitioner filed his § 2241 petition on August 19, 2020.  (Doc. No. 1.)  In his petition, he asserts that his due process rights have been "grossly violated for years" because the Commission and the DHOs have never provided him bilingual representation.  (*Id.* at 1-2.)  He maintains that the Commission never provided an interpreter and that he has "absolutely no documents or paperwork."  (*Id.* at 6-7.) Petitioner argues that all of his disciplinary proceedings were held without an interpreter and that the DHO reports were given to him in English, not Spanish.  (*Id.*)

He maintains that because he did not receive his appellate rights in Spanish, he was unable to appeal the outcomes of his parole and disciplinary proceedings. (*Id.* at 7-8.) As relief, he asks that his sentence be vacated and that any parole be terminated. (*Id.* at 8.) At the very least, he seeks the appointment of counsel[3] and a hearing on the merits of his petition. (*Id.*)

## II.    DISCUSSION

### A.    Claims Regarding Disciplinary Hearings

Liberty interests protected by the Fifth Amendment may arise either from the Due Process Clause itself or from statutory law. *Torres v. Fauver*, 292 F.3d 141 (3d Cir. 2002). It is well settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Nevertheless, the Supreme Court has held that that there can be a liberty interest at stake in disciplinary proceedings in which an inmate loses good conduct time. *Id.* at 557.

In the instant case, Petitioner asserts that his due process rights have been "grossly violated" for years because he was never provided an interpreter at his

---

[3] In an Order dated September 15, 2020, the Court denied Petitioner's motion to appoint counsel without prejudice. (Doc. No. 6.) In doing so, the Court noted that although Petitioner does not speak or understand much English, his filings indicated that he was able to obtain assistance at USP Allenwood in preparing his § 2241 petition. (*Id.*)

disciplinary hearings.  (Doc. No. 1 at 1-2, 6-8.)  Although Petitioner has incurred 69 disciplinary infractions since 1991, it appears that he is challenging his 2017 infraction for a violation of Code 224A, Attempted Assault of Any Person.  (Doc. No. 1 at 11.)  Petitioner, however, fails to assert a cognizable due process claim regarding this infraction because the disciplinary sanctions he received do not implicate a liberty interest protected by the Due Process Clause.  *See Leamer v. Fauver*, 288 F.3d 532, 542 (3d Cir. 2002) (affirming the dismissal of a habeas petition where the imposed disciplinary sanctions did not result in the loss of good conduct time).  To invoke the Due Process Clause, Petitioner must identify a liberty interest that has been violated.  *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).  As noted above, prisoners are entitled to due process only where the disciplinary action results in the loss of good conduct time or when a penalty "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Here, Petitioner does not allege that he lost any good conduct time because of the DHO's finding that he committed the Code 224A violation.  Indeed, Petitioner's disciplinary record confirms that the DHO did not sanction him with the loss of any good conduct time.  (Doc. No. 1 at 13-14.)  Instead, the DHO sanctioned Petitioner with fifteen (15) days of disciplinary segregation and three (3) months' loss of

telephone privileges. (*Id.* at 13.) Such sanctions did not result in any atypical or significant hardships to Petitioner and, therefore, do not implicate protected liberty interests. *See, e.g.*, *Robinson v. Norwood*, 535 F. App'x 81, 83 (3d Cir. 2013) (placement in administrative segregation for days or months at a time does not implicate a protected liberty interest); *Levi v. Holt*, 192 F. App'x 158, 160 (3d Cir. 2006) (loss of various privileges does not invoke due process protections); *Jones v. Thomas*, No. 3:13-cv-3105, 2014 WL 3113420, at *4 (M.D. Pa. July 7, 2014) (concluding that temporary placement in disciplinary segregation and temporary loss of commissary and telephone privileges do not implicate protected liberty interests). Accordingly, because the outcome of Petitioner's 2017 disciplinary proceeding did not have any impact on the fact or length of his sentence or confinement, Petitioner cannot maintain his due process challenge under § 2241.[4] *See Castillo v. FBOP FCI*

---

[4] If Petitioner had identified a liberty interest affected by his 2017 disciplinary hearing, the minimal due process protections set forth in *Wolff* would then apply. In *Wolff*, the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four (24) hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. *Wolff*, 418 U.S. at 563-67.

Courts, however, "have not interpreted *Wolff* to require the presence of an interpreter especially where . . . the record does not support a finding that an interpreter was necessary for [the petitioner] to understand the proceedings or provide a defense on his behalf." *Garcia-Garcia v. Richard*, No. 1:15-cv-11697, 2018 WL 1973280, at *2 (S.D. W. Va. Apr. 26, 2018) (collecting cases). Likewise, "[d]ue process rights are not violated by the failure of the state to appoint an interpreter if the

*Fort Dix*, 221 F. App'x 172, 175 (3d Cir. 2007); *see also Leamer*, 288 F.3d at 540-42.

### B.    Claims Regarding Parole Hearings

In his § 2241 petition, Petitioner also asserts that his due process rights were violated during his parole hearings because he was never provided bilingual representation.  (Doc. No. 1 at 6-8.)  Respondent asserts that: (1) Petitioner failed to exhaust his administrative remedies and (2) Petitioner's claim lacks merit because he rejected Examiner Kubic's offer to continue his hearing to obtain an interpreter. (Doc. No. 15 at 15-20.)  The Court considers each argument in turn.

While § 2241 does not contain an explicit statutory exhaustion requirement, the United States Court of Appeals for the Third Circuit has consistently required a petitioner to exhaust his administrative remedies before filing a § 2241 petition.

---

[petitioner] does not request an interpreter and the state is not otherwise put on notice of a significant language barrier." *Tello v. Sanchez*, No. CIV 15-00724-WJ-LF, 2016 WL 10588064, at *6 (D.N.M. Mar. 8, 2016).  In the instant case, there is no evidence in the record that Petitioner ever requested an interpreter.  Moreover, the DHO's report indicated that Petitioner noted that he understood his rights and was ready to proceed with the hearing.  (Doc. No. 1 at 13.)  Furthermore, Petitioner waived his right to a staff representative and witnesses on his behalf.  (*Id.*)  Thus, even if *Wolff* applied to Petitioner's claim regarding his 2017 disciplinary proceedings, the record does not support a finding that an interpreter was necessary or requested by Petitioner.  *See, e.g.*, *Encarnacion-Montero v. Sanders*, No. CV 12-5262 VBF (JC), 2014 WL 9913503, at *5-6 (C.D. Cal. June 4, 2014) (holding that due process did not require the provision of an interpreter to inmate in prison disciplinary proceeding where, among other things, inmate did not request assistance of interpreter or any other kind of assistance); *Ozsusamlar v. Copenhaver*, No. 1:13-cv-00422-SAB-HC, 2014 WL 791480, at *5-6 (E.D. Cal. Feb. 24, 2014) (finding that due process was not denied where inmate stated he was denied an interpreter during disciplinary proceedings where, among other things, inmate "made several statements at the DHO hearing and on previous occasions" and the record did not support his allegation that he ever requested an interpreter).

*Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996).  Exhaustion is required "for three reasons: (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy."  *Id.* at 761-62 (citing *Bradshaw v. Carlson*, 682 F.2d 1050, 1052 (3d Cir. 1981)).  Thus, "a federal prisoner who . . . fails to exhaust his administrative remedies because of a procedural default, and subsequently finds closed all additional avenues of administrative remedy, cannot secure judicial review of his habeas claim absent a showing of cause and prejudice."  *Id.* at 762.  Exhaustion, however, is not required when it would not promote these goals, such as when exhaustion would be futile.  *See, e.g.*, *Gambino v. Morris*, 134 F.3d 156, 171 (3d Cir. 1998).

In the instant case, the record establishes that Petitioner appeared before Examiner Kubic for a parole hearing on July 10, 2019.  (Doc. No. 15-2 at 4.)  On July 30, 2019, the Parole Commission denied Petitioner parole as a result of that hearing.  (Doc. No. 15-13 at 1.)  Petitioner never appealed that decision to the National Appeals Board.  (Doc. No. 15-14 at 2.)  Thus, it is apparent that Petitioner never exhausted his administrative remedies with respect to the most recent decision to deny him parole.

Petitioner, however, contends that he was unaware of his right to appeal because he was not provided notice of that right in Spanish.  (Doc. No. 1 at 7.) Petitioner's argument, however, is belied by the fact that in 2011, he appealed the Parole Commission's denial of parole to the National Appeals Board.  (Doc. No. 15-7.)  The Court, therefore, concludes that Petitioner's past actions indicate that he was well aware of his right to appeal the 2019 denial of parole to the National Appeals Board.  Moreover, Petitioner's submissions to this Court indicate that he is able to obtain assistance when he so desires.  Thus, Petitioner's claim regarding the denial of parole is subject to dismissal for failure to exhaust administrative remedies. Nevertheless, the Court will address the merits of his claim below.

It is well-settled that "there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Moreover, the "Parole Commission enjoys a great deal of deference as to decisions regarding whether to grant parole to a particular individual."  *Wilson v. U.S. Parole Comm'n*, 193 F.3d 195, 199 (3d Cir. 1999).  Nevertheless, even though a convicted individual has no liberty interest in parole, "a fundamental due process right to be free from 'capricious decision making' protects parole applicants from being denied parole for 'arbitrary or constitutionally impermissible reasons.'"  *Meade v.*

14

*Spaulding*, No. 3:16-cv-2212, 2019 WL 1934873, at *2 (M.D. Pa. May 1, 2019) (quoting *Block v. Potter*, 631 F.2d 233, 236 (3d Cir. 1980)).

From the record before it, the Court cannot conclude that Petitioner's due process rights were violated. The audio recording of Petitioner's July 10, 2019 parole hearing explicitly indicates that Examiner Kubic offered to continue the hearing so that an interpreter could be located. Examiner Kubic offered the continuance in English, and Petitioner responded, also in English, that he wanted to proceed because he had been waiting two (2) years for his hearing. Throughout the hearing, Petitioner either responded to Examiner Kubic's questions in English or had Case Manager Dewalt, who confirmed that she could speak Spanish, interpret for him. Moreover, Petitioner submitted a written statement in English to Examiner Kubic. At the end of the hearing, Petitioner demonstrated his understanding that Examiner Kubic would be recommending that parole be denied because he attempted to explain that he had gone two (2) years without incurring a new disciplinary infraction and that he had occurred several assault infractions because he was defending himself. Petitioner's due process claim concerning the lack of an interpreter, therefore, is meritless. *See Montoya v. Bogan*, 1995 WL 138904, at *2 (6th Cir. Mar. 28, 1995) (concluding that inmate-petitioner's due process claim regarding the lack of an interpreter at his parole revocation hearing was meritless

because the record "show[ed] that [his] attorney was available as an interpreter if [he] had any questions").

## III.   CONCLUSION

For the foregoing reasons, the Court will deny Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  (Doc. No. 1.)  An appropriate Order follows.

<u>s/ Sylvia H. Rambo</u>
United States District Judge

Dated: December 3, 2020